## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **LASHRONDUS STANFORD,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 2:23-cv-147-AMM** |
| | ) | |
| **PWD – BIRMINGHAM,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>MEMORANDUM OPINION ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>

This case is before the court on a motion for summary judgment by defendant PWD – Birmingham, LLC ("PWD"). Doc. 37. For the reasons explained below, the motion is **GRANTED**.

## I.     BACKGROUND

These are the undisputed material facts construed in the light most favorable to plaintiff Lashrondus Stanford:

"PWD is a subsidiary of Pella Corporation that sells and services Pella branded windows and doors." Doc. 38-2 ¶ 1. PWD hired Ms. Stanford on December 30, 2019, as a Service Coordinator. Doc. 38-1 at 8–9, Dep. 28:12–15, 30:4–6. Her duties included creating repair quotes for windows and doors, greeting customers, verifying warehouse product, and acting as an office assistant. *Id.* at 9, Dep. 30:10–32:17.

### A. Ms. Stanford's Testimony Regarding Allegedly Discriminatory Actions After May 6, 2022[1]

PWD promoted Dave Smithey to Sales and Installation Manager in May or June 2021, which made Mr. Smithey Ms. Stanford's supervisor from that time until her termination in July 2022. Doc. 38-2 ¶ 1. Ms. Stanford testified in her deposition that Mr. Smithey "stopped taking [her] calls" at some point during her employment. Doc. 38-1 at 37, Dep. 145:1–4. Ms. Stanford also testified that Mr. Smithey instructed her and Heather DeCastra—a former Senior Service Coordinator—to no longer contact a help line. *Id.* at 37–38, Dep. 145:16–146:17; *id.* at 46, Dep. 179:16–180:23.

Jeremy North was the Acting General Manager of PWD at the time of Ms. Stanford's termination. *Id.* at 21, Dep. 80:5–9. Ms. Stanford testified in her deposition that Mr. North "talk[ed] over [her]" and "treat[ed] [her] like [her] opinions [did not] matter." *Id.*, Dep. 80:14–23.

### B. Ms. Stanford's Testimony Regarding Allegedly Retaliatory Actions

Heather Kalt was a Subsidiary Human Resources Business Partner at PWD during Ms. Stanford's employment. Doc. 38-3 ¶ 10. Tracey Gerelds was a Human

---

[1] As discussed *infra* Section I.D, claims that accrued before this date are time-barred. Nonetheless, Ms. Stanford testified about numerous allegations of racial discrimination that occurred before this date, including other employees playing country music, Doc. 38-1 at 15, Dep. 54:12–55:4, and making the temperature too cold in the office, *id.* at 54, Dep. 210:2–211:8.

2

Resources and Office Coordinator at PWD during Ms. Stanford's employment. Doc. 38-3 at 8.

Ms. Stanford testified in her deposition that she met with Ms. Kalt and Ms. Gerelds on March 30, 2022. Doc. 38-1 at 48, Dep. 186:15–21. Ms. Gerelds was present in the room, and Ms. Kalt was on a phone line. *Id.* at 45, Dep. 175:3–11. Ms. Stanford testified that during this meeting, Ms. Kalt told her that "'[w]e know you contacted outside' -- 'an outside entity about the incident.' Meaning she told me she knew I had contacted EEOC." *Id.* at 44–45, Dep. 173:21–174:5. Ms. Stanford testified that she had her first contact with EEOC in March 2022, but she did not file a charge of discrimination with EEOC at that time. *Id.* at 47, Dep. 183:3–9. According to Ms. Stanford, she did not tell anyone at PWD that she had contacted EEOC, and she did not have any knowledge that EEOC told PWD that she had contacted EEOC. *Id.*, Dep. 183:10–18. Ms. Stanford reaffirmed that Ms. Kalt did not specify what outside entity she was referring to, and Ms. Stanford did not ask her what she meant by that statement. *Id.*, Dep. 184:22–185:11. Ms. Stanford testified that she "knew what [Ms. Kalt] meant" because she "didn't go to anyone else." *Id.*, Dep. 185:3–18. Ms. Stanford testified that neither Ms. Kalt nor Ms. Gerelds took action against her after the meeting. *Id.* at 49, Dep. 190:17–191:1, 192:18–193:1.

### C.   Problems with Ms. Stanford's Employment at PWD

Alyssa Boyd was a Customer Service Representative with PWD until she left her job on February 4, 2021. Doc. 38-3 ¶ 13. Mr. Smithey declared that during Ms. Boyd's exit interview, she stated that she was "resigned from PWD due, at least in part, to Ms. Stanford's behavior in the workplace." Doc. 38-2 ¶ 2.

Jasmine Collins-Hall was a Service Coordinator at PWD from February 2021 until January 2022. Doc. 38-3 ¶ 14. In July 2021, Ms. "Collins-Hall lodged a complaint against Ms. Stanford, alleging hostile work environment." *Id.* ¶ 3. Ms. Collins-Hall complained that when she assigned work to herself and to Ms. Stanford according to the alternating process that Ms. Stanford had demonstrated for her, Ms. Stanford became "upset and said '[y]ou are not my manager and can't tell me what I have to do.'" *Id.* at 9. Ms. Collins-Hall also complained that Ms. Stanford "refer[red] to her as 'little girl,'" even after Ms. Collins-Hall had previously asked Ms. Stanford to refrain from doing so. *Id.* PWD took no action against either Ms. Stanford or Ms. Collins-Hall at the conclusion of its investigation. *Id.* at 8. "When Ms. Collins-Hall resigned in January of 2022, however, she indicated during her exit interview form that one of the reasons for her resignation was her co-workers— specifically noting that 'working with [Ms. Stanford]' was the thing she liked least about working for PWD . . . ." *Id.* ¶ 3.

4

Collin Naylor worked as a Service Technician at PWD during Ms. Stanford's employment. Doc. 38-2 ¶ 3. "In February 2022, [Mr.] Naylor and Ms. Stanford both reported concerns of disrespectful communications toward them from the other." Doc. 38-3 ¶ 4. "Neither Mr. Naylor nor Ms. Stanford accused the other of race discrimination or discrimination on the basis of any other protected trait." *Id.* PWD investigated both complaints but did not discipline either Ms. Stanford or Mr. Naylor. *Id.* PWD sent an email to all Birmingham employees regarding proper email etiquette. *Id.* "Neither Mr. Naylor nor Ms. Stanford reported any further concerns about the other following the March 17, 2022 email." *Id.*

Heather DeCastra was a Senior Service Coordinator at PWD in 2022. *See id.* ¶ 5. "On June 27, 2022, Ms. DeCastra complained to [PWD] about alleged bullying and violations of her privacy by Ms. Warner[]"—who was a Showroom Coordinator at PWD. *Id.* ¶ 6. "Ms. DeCastra alleged that Ms. Warner had accessed Ms. DeCastra's personal information in [PWD's] systems and shared that information with Ms. Stanford." *Id.* And "Ms. DeCastra claimed that Ms. Warner had made remarks about her appearance." *Id.* Ms. DeCastra resigned from PWD before it completed its investigation into her complaints. *Id.* Mr. Smithey declared that Ms. DeCastra identified "Ms. Stanford's behavior in the workplace" as one of her reasons for leaving PWD. Doc. 38-2 ¶ 2.

Based on the results of the investigation of Ms. DeCastra's complaint, PWD decided to discharge Ms. Warner. Doc. 38-3 ¶ 6. Christa Carene—the Senior Human Resources Manager for Sales Subsidiaries for Pella Corporation—travelled to Birmingham in July 2022 to terminate Ms. Warner. *Id.* ¶¶ 1, 6. But "Ms. Warner quit before [PWD decisionmakers] met with her to deliver the separation." *Id.* ¶ 6.

Ms. Carene testified that while she was in Birmingham, she met with Mr. Smithey and Mr. North "to discuss the continued turnover in office staff, including the need to now find a replacement for [Ms.] DeCastra." *Id.* ¶ 7. According to Ms. Carene, she, Mr. Smithey, and Mr. North "had concerns that PWD had gone through a series of service coordinators during Ms. Stanford's tenure, each of whom had expressed concerns involving, at least in part, Ms. Stanford's behavior in the workplace." *Id.* Therefore, Ms. Carene, Mr. Smithey, and Mr. North decided to terminate Ms. Stanford. *Id.*; Doc. 38-2 ¶ 5.

Ms. Carene and Mr. Smithey testified that they decided to terminate Ms. Stanford for the reasons set out in her separation letter. Doc. 38-2 ¶ 5; Doc. 38-3 ¶ 7. That letter provided that "[i]t has been observed and reported to management that your interactions with team members are not positive." Doc. 38-1 at 127. It further stated that "[y]our interactions do not encourage collaboration and team building nor do they promote an interactive, productive work environment." *Id.* And although

PWD "coached [Ms. Stanford] in the past on these and similar issues," PWD did "not see[] significant improvement." *Id.*

Ms. Carene and Mr. Smithey also testified that race was not a factor in their decision to terminate Ms. Stanford, nor did they discuss race when they made the decision to terminate her. Doc. 38-2 ¶ 5; Doc. 38-3 ¶ 7. Ms. Carene and Mr. Smithey state that they did not consider time or attendance-related issues when they decided to terminate Ms. Stanford. Doc. 38-2 ¶ 5; Doc. 38-3 ¶ 7. Ms. Carene and Mr. Smithey further say that they had no knowledge that Ms. Stanford had contacted EEOC when they decided to terminate her, and that they first found out that she had contacted EEOC when they became aware of this lawsuit. Doc. 38-2 ¶ 5; Doc. 38-3 ¶ 7.

### D.   Procedural History

Ms. Stanford filed her charge with EEOC on November 2, 2022. Doc. 1 at 6. On February 7, 2023, Ms. Stanford filed this lawsuit. *Id.* at 1. Ms. Stanford asserts claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, ("Title VII") and the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.* ("ADEA"). *Id.* at 3. Specifically, Ms. Stanford asserts claims for termination, failure-to-promote, retaliation, and age discrimination. *Id.* at 4.

On March 8, 2023, PWD filed a partial motion to dismiss, arguing that all of Ms. Stanford's claims pre-dating May 7, 2022, should be dismissed as untimely. Doc. 5. The court granted that motion and dismissed Ms. Stanford's claims pre-

dating May 6, 2022, including her claims of failure-to-promote and age discrimination, with prejudice as time-barred. Doc. 17 at 4.

On February 29, 2024, PWD filed a motion for summary judgment. Doc. 37. Ms. Stanford filed a "Request to Dismiss Motion for Summary Judgment." Doc. 40. The court will construe Ms. Stanford's filing as her response to the motion filed by PWD. The motion for summary judgment is fully briefed. Docs. 37, 39–41.

## II.   LEGAL STANDARD

A party moving for summary judgment must establish "that there is no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it could "affect the outcome" of the case. *Furcron v. Mail Ctrs. Plus, LLC*, 843 F.3d 1295, 1303 (11th Cir. 2016) (cleaned up). A material fact is in "genuine" dispute if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (cleaned up). In deciding a motion for summary judgment, the court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "[T]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tolan v. Cotton*, 572 U.S. 650, 651 (2014).

8

Additionally, "[*p*]*ro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998). Nonetheless, courts require pro se litigants "to conform to procedural rules." *Albra v. Advan, Inc.*, 490 F.3d 826, 829 (11th Cir. 2007) (cleaned up).

## III.   ANALYSIS

### A.   Non-Discharge Racial Discrimination Claims

"Title VII of the Civil Rights Act of 1964 outlaws employment discrimination because of 'race, color, religion, sex, or national origin.'" *Tynes v. Fla. Dep't of Juv. Just.*, 88 F.4th 939, 943 (11th Cir. 2023) (quoting 42 U.S.C. § 2000e-2(a)(1)). "To prove a claim under [Title VII], a plaintiff can use direct evidence, circumstantial evidence, or both." *Id.* at 944.

"Discrimination claims brought under Title VII may be pursued under a 'single-motive' theory—in which the employee alleges that unlawful bias was 'the true reason' for an adverse employment action . . . ." *Phillips v. Legacy Cabinets*, 87 F.4th 1313, 1321 (11th Cir. 2023) (quoting *Quigg v. Thomas Cnty. Sch. Dist.*, 814 F.3d 1227, 1235 (11th Cir. 2016)). Or a plaintiff may employ "a 'mixed-motive' theory—in which she alleges that bias was simply '*a* motivating factor' for the adverse action, 'even though other factors also motivated the practice.'" *Id.* (quoting 42 U.S.C. § 2000e-2(m)).

"In order to survive summary judgment, a plaintiff alleging intentional discrimination [under Title VII] must present sufficient facts to permit a jury to rule in her favor." *Lewis v. City of Union City*, 918 F.3d 1213, 1220 (11th Cir. 2019) (en banc). "One way that she can do so is by satisfying the burden-shifting framework set out in *McDonnell Douglas*[]" for single-motive cases. *Id*. "A plaintiff can also present direct evidence of discriminatory intent, . . . or demonstrate a 'convincing mosaic' of circumstantial evidence that warrants an inference of intentional discrimination . . . ." *Id*. at 1220 n.6. Additionally, a plaintiff "employee can succeed on a mixed-motive claim [under Title VII] by showing that illegal bias, such as bias based on sex or gender, 'was a motivating factor for' an adverse employment action, 'even though other factors also motivated' the action." *Quigg*, 814 F.3d at 1235 (quoting 42 U.S.C. § 2000e-2(m)).

### 1.  *McDonnell Douglas*

To establish a *prima facie* case of discrimination under *McDonnell Douglas*, a plaintiff must show "(1) that she belongs to a protected class, (2) that she was subjected to an adverse employment action, (3) that she was qualified to perform the job in question, and (4) that her employer treated 'similarly situated' employees outside her class more favorably." *Lewis*, 918 F.3d at 1220–21. The plaintiff may also satisfy the fourth element by demonstrating that "he was replaced by a person

outside his protected class." *Maynard v. Bd. of Regents of Univs. of Fla. Dep't of Educ.*, 342 F.3d 1281, 1289 (11th Cir. 2003).

"A plaintiff asserting an intentional-discrimination claim under *McDonnell Douglas* must demonstrate that she and her proffered comparators were similarly situated in all material respects." *Phillips*, 87 F.4th at 1322 (cleaned up). A similarly-situated comparator generally "will (1) have engaged in the same basic conduct as the plaintiff; (2) have been subject to the same employment policy, guideline, or rule as the plaintiff; (3) have been under the jurisdiction of the same supervisor as the plaintiff; and (4) share the plaintiff's employment or disciplinary history." *Id.*

"If the plaintiff succeeds in making out a *prima facie* case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions." *Lewis*, 918 F.3d at 1221. "The defendant need not persuade the court that it was actually motivated by the proffered reason, but need only present evidence raising a genuine issue of fact as to whether it discriminated against the plaintiff." *Alvarez v. Royal Atl. Devs., Inc.*, 610 F.3d 1253, 1265 (11th Cir. 2010).

"Finally, should the defendant carry its burden, the plaintiff must then demonstrate that the defendant's proffered reason was merely a pretext for unlawful discrimination, an obligation that merges with the plaintiff's ultimate burden of persuading the factfinder that she has been the victim of intentional discrimination." *Lewis*, 918 F.3d at 1221 (cleaned up). "To show pretext, [Mr. Williams] must

11

demonstrate 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence.'" *Alvarez*, 610 F.3d at 1265 (quoting *Combs v. Plantation Patterns,* 106 F.3d 1519, 1538 (11th Cir. 1997)).

The plaintiff cannot "recast an employer's proffered nondiscriminatory reasons or substitute [her] business judgment for that of the employer." *Id.* (quoting *Chapman v. AI Transp.,* 229 F.3d 1012, 1030 (11th Cir. 2000) (en banc)). So long as the employer proffers a reason "that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and [she] cannot succeed by simply quarreling with the wisdom of that reason." *Id.* at 1265–66 (quoting *Chapman*, 229 F.3d at 1030).

PWD argues Ms. Stanford cannot succeed under the *McDonnell Douglas* framework because she cannot "show a similarly situated coworker who was treated more favorably." Doc. 39 at 22. Ms. Stanford does not identify in her pleadings any co-worker who she alleges that PWD treated more favorably. In her deposition, she testified that PWD was "good to [her], but [PWD was] better to [Ms. Boyd], and [PWD] treated [Ms. Collins-Hall] better." Doc. 38-1 at 30, Dep. 115:22–116:1. Both Ms. Boyd and Ms. Collins-Hall left PWD before May 6, 2022, Doc. 38-3 ¶¶ 13–14, and therefore any claims based on this alleged disparity in treatment would be time-barred. Ms. Stanford also testified that Dave Forehand—the Sales Manager—treated

Ms. Warner better than he treated her. Doc. 38-1 at 52, Dep. 202:2–10; *id.* at 54, Dep. 212:1–12. Although Ms. Stanford does not provide a date for these allegations, they all occurred when Ms. Collins-Hall worked for PWD, meaning that claims based on those allegations would be time-barred as well. *See* Doc. 38-3 ¶ 14.

Because Ms. Stanford does not identify a viable comparator, her non-discharge discrimination claims cannot survive summary judgment under the *McDonnell Douglas* framework.

### 2.   Convincing Mosaic

"[A] 'convincing mosaic' is a metaphor, not a legal test and not a framework." *Berry v. Crestwood Healthcare LP*, 84 F.4th 1300, 1311 (11th Cir. 2023). "A 'convincing mosaic' of circumstantial evidence is simply enough evidence for a reasonable factfinder to infer intentional discrimination in an employment action— the ultimate inquiry in a discrimination lawsuit." *Tynes*, 88 F.4th at 946.

"[A] plaintiff may establish a convincing mosaic with evidence of (1) suspicious timing, ambiguous statements, and other bits and pieces from which an inference of discriminatory intent might be drawn; (2) systematically better treatment of similarly-situated employees; and (3) that the employer's justification is pretextual." *Poer v. Jefferson Cnty. Comm'n*, 100 F.4th 1325, 1337 (11th Cir. 2024) (cleaned up). "Employees are not limited in the kinds of circumstantial evidence they may present." *Berry*, 84 F.4th at 1311.

13

Ms. Stanford testified that PWD never disciplined her for attendance issues, Doc. 38-1 at 56, Dep. 218:5–219:16. Ms. Stanford offers no evidence concerning how her perception that others at PWD behaved as though her work was subpar was connected to race. *See id.*, Dep. 219:17–220:19. The only evidence (that is not time-barred) that Ms. Stanford offers of alleged discriminatory treatment is her testimony that Mr. Smithey "stopped taking [her] calls," and "told [her] that [she] could no longer contact . . . a help line," *id.* at 37, Dep. 145:1–20, and that Mr. North "talk[ed] over [her]" and "treat[ed her] like [her] opinions [did not] matter," *id.* at 21, Dep. 80:10–23.

Ms. Stanford's testimony falls well short of creating anything resembling a convincing mosaic of discrimination. Ms. Stanford fails to show how any of the alleged discriminatory treatment that she received was due to her race. Accordingly, Ms. Stanford does not offer "enough evidence for a reasonable factfinder to infer intentional discrimination in an employment action—the ultimate inquiry in a discrimination lawsuit." *Tynes*, 88 F.4th at 946.

Ms. Stanford testified that Mr. Smithey instructed Ms. DeCastra—a white employee—to stop calling the help line as well. Doc. 38-1 at 38, Dep. 146:5–16. At bottom, Ms. Stanford's testimony regarding Mr. Smithey comes down to her assertion that Mr. Smithey "didn't stop [Mr. Naylor] and [Mr. Campbell] from all of that stuff that they were saying to me," which is a time-barred allegation. *Id.*, Dep.

14

147:16–148:2. Even if her claims based on that testimony were not time-barred, Ms. Stanford testified that Mr. Naylor did not speak about race or use any racially derogatory terms, *id.* at 21–22, Dep. 81:22–82:22, and that Mr. Campbell's only reference to race was his statement to Ms. Stanford that he was not a racist, *id.* at 32, Dep. 124:4–11.

No reasonable factfinder could find in favor of Ms. Stanford on her non-discharge discrimination claims because her case entirely relies on her unsupported assumptions and speculation that employees at PWD treated her differently because of her race. *See Tynes*, 88 F.4th at 946. She does not back up that claim with any evidence but asks the court to make inferences in her favor. "But inferences in favor of a plaintiff can be based only on evidence—not on speculation." *Martin v. Fin. Asset Mgmt. Sys., Inc.*, 959 F.3d 1048, 1058 (11th Cir. 2020). Because Ms. Stanford's evidence does not create a convincing mosaic of discrimination, her non-discharge discrimination claims cannot survive summary judgment on that basis.

### 3.    **Mixed-Motive**

"[T]he mixed-motive theory does not depend on proof of a single, 'true reason' for an adverse action . . . ." *Phillips*, 87 F.4th at 1327 (cleaned up). A plaintiff asserting a Title VII claim under a mixed-motive theory must offer "evidence sufficient to convince a jury that: (1) the defendant took an adverse employment action against the plaintiff; and (2) a protected characteristic was *a* motivating factor

for the defendant's adverse employment action." *Id.* (cleaned up). At the summary-judgment stage, "the court must determine whether the plaintiff has presented sufficient evidence for a reasonable jury to conclude, by a preponderance of the evidence, that her protected characteristic was a motivating factor for an adverse employment decision." *Quigg*, 814 F.3d at 1239 (cleaned up).

In *Muldrow v. City of St. Louis*, the Supreme Court clarified that so long as the plaintiff can "show some harm respecting an identifiable term or condition of employment," that is enough to establish an adverse employment action. 144 S. Ct. 967, 974 (2024). The harm need not be "significant," and "terms or conditions . . . covers more than the economic or tangible." *Id.* (cleaned up).

Ms. Stanford's non-discharge discrimination claims cannot survive summary judgment under a mixed-motive theory either because she offers no evidence to support her claims that race was a motivating factor in her alleged mistreatment. As discussed above, *see supra* Section III.B.2, Ms. Stanford has failed to provide any evidence that PWD employees discriminated against her based on her race. Therefore, no reasonable jury could conclude that race "was *a* motivating factor" for the alleged adverse employment actions at issue. *Quigg*, 814 F.3d at 1238 (cleaned up).

Because Ms. Stanford has not developed evidence that anyone at PWD considered or cited her race in their treatment of her, the court **GRANTS** judgment in favor of PWD on her non-discharge discrimination claims.

### B.      Ms. Stanford's Discharge Discrimination Claim

Ms. Stanford's discrimination claim based on her discharge from PWD meets an identical fate because she fails to establish how her discharge was connected to her race.

Ms. Stanford makes no effort to identify a comparator for purposes of a *McDonnell Douglas* analysis, so the court analyzes her claim through use of the convincing mosaic metaphor and under a mixed-motive theory.

### 1.      Convincing Mosaic

Because "the evidence, viewed in the light most favorable to [Ms. Stanford], would [not] allow a reasonable jury to infer that the employer engaged in intentional [discrimination]," Ms. Stanford cannot establish a convincing mosaic of discrimination. *Berry*, 84 F.4th at 1310. Ms. Stanford offers no evidence or argument to rebut the reason PWD offered for her termination: that her "interactions with team members [we]re not positive. [Her] interactions d[id] not encourage collaboration and team building nor d[id] they promote an interactive, productive work environment." Doc. 38-1 at 127. Because Ms. Stanford's offers no evidence that

PWD discriminated against her based on her race by terminating her, her claim cannot survive summary judgment on this basis.

### 2.   Mixed-Motive

Ms. Stanford also cannot establish that race was a motivating factor in PWD's decision to terminate her. PWD offered uncontroverted evidence from all participants in Ms. Stanford's termination that they did not consider race when they decided to terminate Ms. Stanford. Doc. 38-2 ¶ 5; Doc. 38-3 ¶ 7. The record establishes that no one brought up race during the termination meeting. Doc. 38-1 at 21, Dep. 78:19–80:9; *id.* at 42, Dep. 163:8–165:19. Ms. Stanford does not offer any evidence to create a genuine issue of material fact with the evidence offered by PWD. Therefore, she cannot prevail under a mixed-motive theory of discrimination based on her discharge from PWD.

The court **GRANTS** judgment in favor of PWD on Ms. Stanford's claim of racial discrimination based on her discharge.

### C.   Ms. Stanford's Retaliation Claim

The retaliation provision of Title VII prohibits an employer from "discriminat[ing] against" an employee because she "opposed any practice" made unlawful by Title VII or "made a charge, testified, assisted, or participated in" a Title VII proceeding or investigation. 42 U.S.C. § 2000e–3(a). "To establish a claim of retaliation, [a plaintiff] must prove that she engaged in statutorily protected activity,

that she suffered an adverse action, and that the adverse action was causally related to the protected activity." *Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 924 (11th Cir. 2018). To establish causation, a plaintiff must prove "that the protected activity was a but-for cause of the alleged adverse action by the employer." *Id.* (cleaned up). In other words, "a plaintiff must prove that had she not complained, she would not have been" subjected to the alleged discriminatory action. *Id.* A plaintiff may prove a retaliation claim under the *McDonell Douglas* framework or using the convincing mosaic metaphor. *See Yelling v. St. Vincent's Health Sys.*, 82 F.4th 1329, 1337–38 (11th Cir. 2023). "[T]he mixed-motive framework does not apply to Title VII retaliation claims." *Id.* at 1338.

PWD contends that the lapse of time between Ms. Stanford's protected activity of contacting EEOC and her termination severs any causal link between those two events. The Eleventh Circuit has held that "in the absence of other evidence tending to show causation, if there is a substantial delay between the protected expression and the adverse action, the complaint of retaliation fails as a matter of law." *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) ("A three to four month disparity between the statutorily protected expression and the adverse employment action is not enough."); *Brown v. Alabama Dep't of Transp.*, 597 F.3d 1160, 1182 (11th Cir. 2010) (holding that in the absence of other evidence establishing causation, "[e]ven a three-month interval between the

protected expression and the employment action—the briefest interval we face here—is too long."). Ms. Stanford testified that she contacted EEOC in March 2022. Doc. 38-1 at 47, Dep. 183:3–6. PWD terminated her on July 22, 2022. *Id.* at 127. Based on the Eleventh Circuit caselaw, the lapse of time between Ms. Stanford's protected activity and her termination tends to preclude her claim as a matter of law.

Although Ms. Stanford does not make the argument, the court considers whether her claim should survive the lapse in time because she offered other evidence of causation: Ms. Stanford testified that Ms. Kalt confronted her about going "to an outside entity." *Id.* at 47, Dep. 184:12–21 (cleaned up). But Ms. Stanford offers no evidence that the decisionmakers in her termination had any knowledge that she contacted EEOC. In the Eleventh Circuit, "the plaintiff must generally show that the decision maker was aware of the protected conduct at the time of the adverse employment action." *Brungart v. BellSouth Telecomms., Inc.*, 231 F.3d 791, 799 (11th Cir. 2000). "That requirement rests upon common sense[]" because "[a] decision maker cannot have been motivated to retaliate by something unknown to him." *Id.*

According to Ms. Stanford, Ms. Kalt was the one who confronted her about contacting an outside entity, and Ms. Gerelds was present for that conversation. Doc. 38-1 at 44–45, Dep. 173:18–174:5. It is undisputed that Mr. Smithey, Mr. North, and Ms. Carene decided to terminate Ms. Stanford from PWD. Doc. 38-3 ¶ 7; Doc. 38-

2 ¶ 5. Ms. Stanford also does not dispute Ms. Carene's declaration that Ms. "Gerelds did not participate" in discussions regarding Ms. Stanford's termination, Doc. 38-3 ¶ 7, or Mr. Smithey's declaration of the same, Doc, 38-2 ¶ 5. Both Ms. Carene and Mr. Smithey also testified that Ms. Kalt was not involved in these discussions because she was no longer an employee of PWD at that time. Doc. 38-3 ¶ 7; Doc. 38-2 ¶ 5. Additionally, Ms. Carene and Mr. Smithey averred that they had no knowledge that Ms. Stanford had contacted EEOC until they became aware of this lawsuit—long after they had terminated Ms. Stanford. Doc. 38-3 ¶ 7; Doc. 38-2 ¶ 5. Ms. Stanford offers no evidence to create a genuine dispute of material fact on this issue.

And even if Ms. Stanford produced evidence that established that the decisionmakers who terminated her knew that she contacted EEOC—which, to be clear, she did not—she failed to produce any evidence that tends to show that her contact of EEOC was the "but-for cause" of her termination. *Jefferson*, 891 F.3d at 924 (cleaned up). When Ms. Carene came to Birmingham to terminate Ms. Warner, Doc. 38-3 ¶ 6, Ms. Carene discussed the state of the Birmingham PWD office with Mr. Smithey and Mr. North, and they decided to terminate "Ms. Stanford for the reasons set forth in her separation letter." *Id.* ¶ 7. Those reasons did not include the fact that Ms. Stanford had contacted EEOC. Doc. 38-1 at 127. Ms. Stanford offers nothing to dispute this evidence with the exception of her testimony that Ms. Kalt

told her that she knew that Ms. Stanford had contacted "an outside entity." *Id.* at 47, Dep. 184:12–21 (cleaned up). Notably, Ms. Stanford did not confirm with Ms. Kalt "if she knew that [Ms. Stanford] had contacted the EEOC." *Id.*, Dep. 185:9–18. Ms. Stanford has failed to show that retaliatory intent influenced—let alone compelled— the decisionmakers at PWD to terminate her, as required under Eleventh Circuit precedent. *See Yelling*, 82 F.4th at 1340 (cleaned up) ("Where but-for causation is required, a plaintiff with evidence of only a tagalong forbidden consideration cannot meet her summary judgment burden because she cannot show that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer.").

The court **GRANTS** summary judgment in favor of PWD on Ms. Stanford's retaliation claim.

## IV.   CONCLUSION

The court **GRANTS** the motion for summary judgment filed by PWD. The court **DENIES** Ms. Stanford's request to dismiss the motion for summary judgment filed by PWD. The Clerk of Court is **DIRECTED** to close the case.

**DONE** and **ORDERED** this 5th day of August, 2024.

**ANNA M. MANASCO**
UNITED STATES DISTRICT JUDGE

22